# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

Jane Doe 3,                              §
                                         §
    *Plaintiff*,                     §
                                         §
                                         §
    v.                               §          Civil Action No.
                                         §          1:19-cv-03843-WMR
Red Roof Inns, Inc., *et al.*            §
                                         §
    *Defendants*.                    §
                                         §

## DEFENDANTS HILTON FRANCHISE HOLDING LLC'S, HILTON DOMESTIC OPERATING COMPANY INC.'S, AND HILTON WORLDWIDE HOLDINGS INC.'S MEMORANDUM OF LAW IN <u>SUPPORT OF THEIR MOTION TO DISMISS UNDER RULE 12(b)(6)</u>

## TABLE OF CONTENTS

**Page**

SUMMARY OF THE ARGUMENT ....................................................1

STANDARD OF REVIEW ..............................................................2

FACTUAL BACKGROUND............................................................3

ARGUMENT ...................................................................................5

I.   Plaintiff has no possibility of recovery against Hilton on her six
     TVPRA claims (Counts 16–21). ...........................................7

     A.   Counts 16 and 19 do not plausibly allege a sex trafficking
          perpetrator claim against Hilton ..................................7

     B.   Counts 17–18 and 20–21 do not plausibly allege sex trafficking
          financial beneficiary claims .......................................10

          1.   "Knowingly Benefits"............................................11
          2.   "Participation in a Venture"...................................13
          3.   "Knowing or in Reckless Disregard" and "Knew or Should Have
               Known"...........................................................14

II.  Plaintiff has no possibility of recovery against Hilton on her Georgia
     RICO claims (Counts 32–35)...............................................16

III. Plaintiff has no possibility of recovery against Hilton on her negligence
     claims (Count 39-40)..........................................................21

IV.  All counts against Hilton fail because they do not allege agency or
     vicarious liability...............................................................22

CONCLUSION AND PRAYER .........................................................25

CERTIFICATE OF COMPLIANCE...................................................27

CERTIFICATE OF SERVICE .........................................................28

# TABLE OF AUTHORITIES

**Page**

CASES

*Ahmed v. Air France-KLM,*
    165 F. Supp. 3d 1302 (N.D. Ga. 2016)...............................................24

*Am. Dental Ass'n v. Cigna Corp.,*
    605 F.3d 1283 (11th Cir. 2010) ...........................................3, 7, 19, 21

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)...........................................................................passim

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007)...................................................................................2

*Brons v. U.S.,*
    1:14-CV-00864, 2015 WL 630433 (N.D. Ga. Feb. 12, 2015) ......................7, 24

*Canosa v. Ziff,*
    No. 18 CIV. 4115 (PAE), 2019 WL 498865 (S.D.N.Y. Jan. 28,
    2019) ................................................................................12, 13, 14

*Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.,*
    511 U.S. 164 (1994)..............................................................................10

*Cobb Cty. v. Jones Group P.L.C.,*
    460 S.E.2d 516 (Ga. Ct. App. 1995).............................................18, 19

*DaimlerChrysler Motors Co., LLC v. Clemente,*
    668 S.E.2d 737 (Ga. Ct. App. 2008).................................................23

*Doe v. Fulton-Dekalb Hosp. Auth.,*
    628 F.3d 1325 (11th Cir. 2010) ....................................................7, 24

## TABLE OF AUTHORITIES
### (continued)

Page

*Duvall v. Cronic*,
820 S.E.2d 780 (Ga. Ct. App. 2018)....................................................................18

*Geiss v. Weinstein Co. Holdings LLC*,
383 F. Supp. 3d 156 (S.D.N.Y. 2019) ............................................11, 12, 13, 14

*Gilbert v. U.S. Olympic Comm.*,
18-CV-00981-CMA-MEH, 2019 WL 4727636 (D. Colo. Sept. 27, 2019) ...............................................................................................................15

*Jean-Charles v. Perlitz*,
937 F. Supp. 2d 276 (D. Conn. 2013)..................................7, 10, 15, 24

*Lawson v. Rubin*,
No. 17-cv-6404 (BMC), 2018 WL 2012869 (E.D.N.Y. Apr. 29, 2018) ......................................................................................9, 14, 15

*Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist.*,
992 F.2d 1171 (11th Cir. 1993) .........................................................................2

*McGuire v. Radisson Hotels Intern., Inc.*,
435 S.E.2d 51 (Ga. Ct. App. 1993)....................................................................23

*Piedmont Hosp., Inc. v. Palladino*,
580 S.E.2d 215 (Ga. 2003) ......................................................................7, 24

*Noble v. Weinstein*,
335 F. Supp. 3d 504 (S.D.N.Y. 2018) ..................................8, 10, 14, 15

*Ramcke v. Georgia Power Co.*,
703 S.E.2d 13 (Ga. Ct. App. 2010)..............................................................16, 21

*Ratha v. Phatthana Seafood Co., Ltd.*,
CV 16-4271-JFW, 2017 WL 8293174 (C.D. Cal. Dec. 21, 2017)................8, 14

## TABLE OF AUTHORITIES
### (continued)

Page

*Ricchio v. McLean*,
    853 F.3d 553 (1st Cir. 2017) ................................................................... 15

*Simpson v. Sanderson Farms, Inc.*,
    744 F.3d 702 (11th Cir. 2014) ................................................................. 18

*S. Intermodal Logistics, Inc. v. D.J. Powers Co., Inc*,
    555 S.E.2d 478 (Ga. Ct. App. 2001) ....................................................... 17

*State v. Delaby*,
    681 S.E.2d 645 (Ga. Ct. App. 2009) ................................................. 18, 20

*Stewart Ausband Enterprises, Inc. v. Holden*,
    826 S.E.2d 138 (Ga. Ct. App. 2019) ....................................................... 18

*Summit Automotive Group v. Clark*,
    992 681 S.E.2d 681 (Ga. Ct. App. 2009) ................................................ 22

*Weiland v. Palm Beach Cty. Sheriff's Office*,
    792 F.3d 1313 (11th Cir. 2015) ................................................................. 7

*United States v. Afyare*,
    632 Fed. Appx. 272 (6th Cir. 2016) .................................................. 13, 14

*Wylie v. Denton*,
    746 S.E.2d 689 (Ga. Ct. App. 2013) .................................................. 16, 19

**STATUTES**

O.C.G.A. § 9-3-33 ....................................................................................... 21

O.C.G.A. § 16-2-22(a)(2) ...................................................................... 18, 19

O.C.G.A. § 16-6-12 ..................................................................................... 17

O.C.G.A. § 16-14-4(a) ................................................................................. 16

**TABLE OF AUTHORITIES**
(continued)

Page

O.C.G.A. § 16-14-4(c) ...................................................................................16

O.C.G.A. § 16-14-3(8)(A) .............................................................................16

O.C.G.A. § 16-14-8 .......................................................................................16

O.C.G.A. § 51-3-1 ...................................................................................16, 21

18 U.S.C. § 1591(a) ...............................................................................passim

18 U.S.C. § 1591(e)(4) ..................................................................................13

18 U.S.C. § 1591(e)(6) ..................................................................................13

18 U.S.C. § 1595(a) .......................................................................................15

**RULES**

Fed. R. Civ. P. 8 ...............................................................................................2

Fed. R. Civ. P. 12(b)(6) .........................................................................1, 2, 24

**OTHER AUTHORITIES**

HILTON CODE OF CONDUCT (May 10, 2017), *available at*
    https://ir.hilton.com/~/media/Files/H/Hilton-Worldwide-IR-
    V3/committee-composition/hlt-code-of-conduct-en-rev-05-10-
    17.pdf ........................................................................................................6

HILTON HUMAN RIGHTS POLICY STATEMENT (May 2017), *available at*
    https://ir.hilton.com/~/media/Files/H/Hilton-Worldwide-IR-
    V3/committee-composition/he-human-rights-policy-2017.pdf...........................6

HILTON RESPONSIBLE SOURCING POLICY (March 2017), *available at*
    https://cr.hilton.com/wp-content/uploads/2019/05/Hilton-
    Responsible-Sourcing-Policy.pdf ..............................................................6

## TABLE OF AUTHORITIES
### (continued)

Page

HILTON SLAVERY AND HUMAN TRAFFICKING STATEMENT (2017),
*available at* https://ir.hilton.com/~/media/Files/H/Hilton-
Worldwide-IR-V3/committee-composition/slavery-and-trafficking-
statement-2018.pdf ...................................................................................................6

FRANCHISE DISCLOSURE DOCUMENT HAMPTON INN (2019), *available
at* https://www.hilton.com/en/corporate/development/disclosure-
documents/ ...................................................................................................22, 23

Defendants Hilton Franchise Holding LLC, Hilton Domestic Operating Company Inc., and Hilton Worldwide Holdings Inc. ("Hilton") file this Memorandum of Law in Support of the Motion to Dismiss Plaintiff's Amended Complaint for failure to state a claim pursuant to Rule 12(b)(6) and state as follows:

## SUMMARY OF THE ARGUMENT

Plaintiff has brought TVPRA, Georgia RICO, and negligence claims against Hilton for the alleged participation of two vaguely identified employees at separate Hilton franchisees—the Hampton Inn at 1975 North Druid Hills Road NE in Atlanta ("HI Druid Hills") and the Hampton Inn at 2775 Cumberland Parkway SE in Atlanta ("HI Cumberland") (together, "Hampton Inns")—in sex trafficking ventures. But Plaintiff's claims hinge on an unavailing theory of agency based on Hilton's franchise relationships with the Hampton Inns.

- The TVPRA claims (Counts 16–21) fail as a matter of law. The sex trafficking perpetrator claims fail because the criminal *mens rea* is not plausibly alleged against Hilton—who did not have a single interaction with Plaintiff. And the knowing beneficiary claims fail because Plaintiff has not plausibly alleged that Hilton knowingly benefited from sex trafficking ventures.

- The Georgia RICO claims (Counts 32–35) are barred by the five-year statute of limitations. They also fail as a matter of law because Plaintiff has not plausibly alleged any predicate acts by a Hilton director or manager or the existence of any conspiracy.

- The negligence claims (Counts 39–40) are barred by the two-year statute of limitations and are not viable because only an "owner or occupier" has a premises liability duty under Georgia law—not a franchisor.

- All of Plaintiff's claims fail because vicarious liability is not available against Hilton.  A franchise agreement does not create a principal-agent relationship under Georgia law, and the Amended Complaint contains no allegations that Hilton had a right of control over the Hampton Inns to establish an agency relationship.  Moreover, there is no allegation that participation in a sex trafficking venture would be within the Hampton Inns' scope of authority.

For these reasons, Plaintiff's Amended Complaint fails to state a claim upon which relief can be granted against Hilton and should be dismissed with prejudice.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) requires that a complaint meet the pleading standards of Federal Rule of Civil Procedure 8 so as to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted).  Dismissal is appropriate "when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." *Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993).  The complaint must "state a claim to relief that is plausible on its face," with allegations sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570.  Thus, a complaint must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.*.  Courts need not accept as true "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009). Instead, courts must conduct a context-specific inquiry and rely on "judicial experience and common sense" to determine if a plaintiff's "well-pleaded factual allegations . . . plausibly give rise to an entitlement to relief." *Id.* at 679.

In *Iqbal*, "[t]he Court suggested that courts considering motions to dismiss adopt a 'two-pronged approach' in applying these principles: 1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (citing *Iqbal*, 556 U.S. at 679).

## FACTUAL BACKGROUND

Plaintiff is a survivor of sex trafficking. Am. Compl. ¶ 2. Between 2010 and 2012, Plaintiff's traffickers forced her to engage in commercial sex acts with multiple buyers on a daily basis. *Id.* ¶¶ 3, 12. This horrific conduct occurred at numerous hotels across the Atlanta area. Among these hotels, Plaintiff alleges that she was trafficked at two Hilton franchise locations: the HI Druid Hills and the HI Cumberland. Hilton licenses its name, logo, and brand to franchises, which are owned and operated by independent non-Hilton entities. Plaintiff alleges that, on approximately ten occasions between 2010 and 2012, she was trafficked at the HI Druid Hills by various traffickers. *Id.* ¶ 185. Plaintiff was frequently trafficked with

two to three minor victims and, on some of these occasions, Plaintiff was trafficked at the same time as Jane Doe 4 (though their traffickers were different).[1]  *Id.* ¶ 186.

Plaintiff alleges that there was a male front desk employee at the HI Druid Hills who served as lookouts for her traffickers.  Acting in his own self-interest, this individual provided discounted rooms to Plaintiff's traffickers in exchange for money and drugs.  *Id.* ¶ 188.  In order to prevent detection, the male front desk employee alerted the trafficker if police were at the hotel or if complaints were received from hotel guests.  *Id.* ¶ 188.  Plaintiff does not suggest that she had any personal interaction with the male front desk employee.

Plaintiff also alleges that there was a female front desk employee at the HI Druid Hills who worked as a lookout for sex traffickers in exchange for drugs.  *Id.* ¶ 190.  However, Plaintiff does not allege that this female employee worked as a lookout for her traffickers in particular, and she does not suggest that she had any personal interactions with this employee.  In fact, Plaintiff does not allege that she interacted with any HI Druid Hills employees whatsoever.  Further, Plaintiff does

---

[1] Although Plaintiff alleges that there were occasions when she was trafficked at the HI Druid Hills at the same time was Jane Doe 4, Jane Doe 4's Amended Complaint does not suggest that she was trafficked at that location.  *See* Amended Complaint, *Jane Doe 4 v. Red Roof Inns, Inc. et al.*, 1:19-cv-03845-WMR (N.D. Ga. Nov. 21, 2019).

not allege that Hilton or the HI Druid Hills staff knew of the independent bad acts of these two front desk employees.

In addition, Plaintiff alleges that she was trafficked at the HI Cumberland on approximately twenty occasions between 2010 and 2012, frequently with two minor victims. *Id.* ¶¶ 205–206. On some of these occasions, Jane Doe 4 and Plaintiff were trafficked at the same time (though again by different traffickers). *Id.* ¶ 206. Plaintiff alleges that there was one HI Cumberland employee who assisted her trafficker. Acting in his own self-interest, this male front desk employee would exchange free hotel rooms for daily sex with Plaintiff and the minor victims. *Id.* ¶ 208. If another hotel guest made a complaint, the employee would move the group to a different set of rooms to prevent detection. *Id.* ¶ 209. Plaintiff does not allege personal interactions with any HI Cumberland employees apart from this employee. Plaintiff also does not allege that Hilton or the HI Cumberland staff knew of the independent bad acts of this employee.

In addition, Plaintiff alleges blanket allegations against all defendants:

- Plaintiff exhibited physical deterioration, malnourishment, lack of eye contact and money, poor hygiene, fatigue, sleep deprivation, monitoring by her traffickers, and injuries. *Id.* ¶¶ 191, 210.

- Plaintiff's hotel rooms contained evidence of sex trafficking, including trash cans with multiple used condoms, more than one cell phone within the room, minimal personal items in the rooms, traffic in and out of her rooms, and requests for additional towels from housekeeping. *Id.* ¶¶ 192–193, 211–212.

- Hilton would have sent inspectors to the Hampton Inns (without specifying when or under what circumstances), generally receives customer complaints about its hotels, and "[o]n information and belief" would have received complaints related to prostitution, commercial sex trafficking, and other criminal activity. *Id.* ¶¶ 194–197, 213–216.

While undoubtedly tragic—and more than sufficient to establish that her traffickers should be held accountable—Plaintiff does not set forth facts asserting that Hilton knew or should have known of the sex trafficking ventures. And Plaintiff ignores that Hilton is an established leader in the fight against trafficking and has expended significant resources to preventing victimization.[2]

## ARGUMENT

Notwithstanding the length of the Amended Complaint, few facts are pled that have any bearing on Plaintiff's claims against Hilton. Following the approach set out by the Supreme Court in *Iqbal*, this Court should: (1) eliminate any allegations in the complaint that are merely legal conclusions; and (2) determine whether the remaining well-pleaded allegations plausibly give rise to relief. *Iqbal*, 556 U.S. at

---

[2] *See, e.g.*, HILTON CODE OF CONDUCT 21 (May 10, 2017), *available at* https://ir.hilton.com/~/media/Files/H/Hilton-Worldwide-IR-V3/committee-composition/hlt-code-of-conduct-en-rev-05-10-17.pdf; HILTON HUMAN RIGHTS POLICY STATEMENT 2 (May 2017), *available at* https://ir.hilton.com/~/media/Files/H/Hilton-Worldwide-IR-V3/committee-composition/he-human-rights-policy-2017.pdf; HILTON RESPONSIBLE SOURCING POLICY 3 (March 2017), *available at* https://cr.hilton.com/wp-content/uploads/2019/05/Hilton-Responsible-Sourcing-Policy.pdf; HILTON SLAVERY AND HUMAN TRAFFICKING STATEMENT 2–4 (2017), *available at* https://ir.hilton.com/~/media/Files/H/Hilton-Worldwide-IR-V3/committee-composition/slavery-and-trafficking-statement-2018.pdf.

679; *Am. Dental Ass'n*, 605 F.3d at 1290.[3]  The well-pleaded allegations do not state viable claims against Hilton, nor do they establish that Hilton could be vicariously liable for the acts of the Hampton Inns or their employees.

## I.  Plaintiff has no possibility of recovery against Hilton on her six TVPRA claims (Counts 16–21).

Because Hilton cannot be vicariously liable for the acts of either of the Hampton Inns, the claims against Hilton must be dismissed.  *See* Section IV, *infra*. Plaintiff also does not plausibly allege the elements of the TVPRA claims.[4]

### A.  Counts 16 and 19 do not plausibly allege a sex trafficking perpetrator claim against Hilton.

Counts 16 and 19 allege that Hilton violated Section 1591(a)(1) by knowingly "harboring" and "maintaining" Plaintiff at the Hampton Inns, knowing or in reckless disregard of the fact that means of force, threats of force, fraud, and/or coercion would be used to cause Plaintiff to engage in commercial sex acts.  Am. Compl. ¶¶ 382, 407.  Plaintiff also alleges that Hilton is liable for aiding and abetting other

---

[3] The Amended Complaint is also a shotgun pleading, which is impermissible under the law of this Circuit.  *See Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1321–23 (11th Cir. 2015).

[4] The allegations likewise do not state a claim against either the HI Druid Hills or the HI Cumberland.  The rogue employees' acts of allegedly accepting bribes and sex to facilitate trafficking are outside the scope of employment as a matter of law. *See Piedmont Hosp., Inc. v. Palladino*, 580 S.E.2d 215, 216–18 (Ga. 2003); *see also Doe v. Fulton-Dekalb Hosp. Auth.*, 628 F.3d 1325, 1335 (11th Cir. 2010); *Brons v. U.S.*, 1:14-cv-00864-WSD, 2015 WL 630433, at *5–6 (N.D. Ga. Feb. 12, 2015); *Jean-Charles v. Perlitz*, 937 F. Supp. 2d 276, 286 (D. Conn. 2013).

perpetrators.  *Id.* ¶¶ 383, 408.  These incredibly serious allegations are wholly unsupported and constitute a criminal offense reserved for those who actually commit sex trafficking, with a punishment of 15 years to life imprisonment.  18 U.S.C. § 1591(b).  However, Plaintiff has pled facts that are entirely insufficient to support such serious claims.  Section 1591(a)(1) has *never* been used in such a cavalier way: against a company that contracts with franchise locations, at which a victim was trafficked.  To the contrary, Section 1591(a)(1) is intended to punish the actual trafficker—and his or her direct co-conspirators.

The mental state required by Section 1591(a)(1) is that of a criminal offense— actual knowledge or reckless disregard that Plaintiff was harbored or maintained *and* that force or fraud caused Plaintiff's sex trafficking.  *See Noble v. Weinstein*, 335 F. Supp. 3d 504, 517–18 (S.D.N.Y. 2018) (finding that plaintiff must plausibly allege "knowledge that means of force or fraud would be used to cause a commercial sex act to take place.").  Indeed, Section 1591(a) imposes liability only on a party that knew of or recklessly disregarded the *specific sex trafficking acts* it is charged with. *See, e.g.*, *Ratha v. Phatthana Seafood Co., Ltd.*, CV 16-4271-JFW (ASx), 2017 WL 8293174, at \*5 (C.D. Cal. Dec. 21, 2017).  Plaintiff fails to satisfy this high bar, instead only asserting that Hilton should have known about sex trafficking generally within its hotels—a far cry from actual knowledge of Plaintiff's trafficking.

Plaintiff alleges that Hilton sent inspectors to examine the Hampton Inns (Am. Compl. ¶¶ 194, 213), and "[o]n information and belief," Hilton received guest complaints about the Hampton Inns related to prostitution, commercial sex trafficking, and other criminal activity, without any reference to Plaintiff or her traffickers (*Id.* ¶¶ 197, 216).  Even assuming Hilton sent inspectors to the Hampton Inns, Plaintiff alleges that she was trafficked at HI Druid Hills for what would amount to an average of three stays per year, and that she was trafficked at the HI Cumberland for what would amount to an average of six stays per year.  Am. Compl. ¶¶ 185, 205.  These stays did not constitute a sufficient presence to make the bold assumption that the trafficking should have been apparent to the inspectors.[5]  This, combined with the unsupported allegation that Hilton was made aware of sex trafficking generally through customer complaints, fails to establish the necessary *mens rea* to support this claim.  *See Lawson v. Rubin*, No. 17-cv-6404 (BMC), 2018 WL 2012869, at *13–14 (E.D.N.Y. Apr. 29, 2018) (determining that the owner of a condo did not meet the knowing standard because one police visit and one ambulance over six years were insufficient to put the owner on notice).[6]

---

[5] And there is no plausible allegation that Hilton inspectors would enter guest rooms (with guests present) to see the alleged red flags Plaintiff describes.  This is particularly true given that Plaintiff asserts that the traffickers and front desk clerks were doing everything they could to hide the trafficking from hotel management.

[6] Plaintiff never alleges she interacted with anyone other than the male front desk employee at the HI Cumberland, whose knowledge is not attributable to Hilton

The allegations also do not establish that Hilton "harbored" or "maintained" Plaintiff for the purpose of sex trafficking.  Hilton is not the owner, operator, or manager of either hotel.  And Plaintiff did not assert any interaction between a Hilton employee and Plaintiff or her traffickers.  Plaintiff tries to cure this deficiency by asserting an aiding and abetting theory, but the TVPRA does not allow that theory. *See Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 184 (1994) ("[T]here is no general presumption that the plaintiff may also sue aiders and abettors."); *Noble*, 335 F. Supp. 3d at 525–26 (dismissing TVPRA aiding and abetting claims); *Jean-Charles*, 937 F. Supp. 2d 276, 287 (D. Conn. 2013).

**B. Counts 17–18 and 20–21 do not plausibly allege sex trafficking financial beneficiary claims.**

Counts 17, 18, 20, and 21 allege that Hilton is liable as a knowing beneficiary of two sex trafficking ventures.  Counts 17 and 20 allege that Hilton *knew or recklessly disregarded* that it was participating in sex trafficking ventures, making it a criminal perpetrator of Section 1591(a)(2).  Am. Compl. ¶¶ 390, 415.  Counts 18 and 20 allege that Hilton *knew or should have known* (negligently) it was participating in sex trafficking ventures. *Id.* ¶¶ 398, 423.  All four counts fail.

---

because his misconduct was outside the scope of his employment.  Plaintiff's specific allegations that hotel staff at the Hampton Inns facilitated her trafficking—while tragic if true—refer to interactions between Plaintiff and the Hampton Inns—not Hilton—and thus rely on a theory of agency that is neither alleged nor legally viable. *See supra* note 4; *see also infra* Section IV.

### 1. "Knowingly Benefits"

To *knowingly* benefit is more than to merely benefit—the plain words of the statute require a mental state. *See Geiss v. Weinstein Co. Holdings LLC*, 383 F. Supp. 3d 156, 169 (S.D.N.Y. 2019) (requiring actual or constructive knowledge of causal relationship between trafficking acts and receipt of benefit). Plaintiff's theory is that Hilton, through franchise contracts, receives some revenue from the Hampton Inns renting rooms. Am. Compl. ¶¶ 391, 416. The claims against Hilton fail because Plaintiff's allegations do not constitute an actual benefit, they ignore the word "knowingly," and they do not tie the purported benefit to the sex trafficking ventures.

Hilton receives no benefit from sex trafficking that it would not receive from any other use of a hotel room—there are only *significant downsides* for Hilton. Hilton diverts considerable resources to prevent sex trafficking at its franchises; the possibility of trafficking creates risks to hotel guests and potential loss of reputation. There is no plausible argument—nor any alleged facts—that Hilton is better off because of sex trafficking.[7] If the allegations are taken as true, Hilton has only *lost*

---

[7] Indeed, as set forth in the article cited by Plaintiff (*see* Am. Compl. ¶ 84 n. 20), the incident that occurred at a Hilton franchise location in China resulted in significant public reputational damage, and other press reporting makes clear that Hilton even shut down the hotel for a significant period of time—a far cry from a financial benefit. *See* Manu Bhandari, *Hilton Worldwide Responds to Child-Trafficking Scandal*, WASHINGTON BUSINESS JOURNAL (Oct. 31, 2010), https://www.bizjournals.com/washington/news/2010/10/31/hilton-responds-to-

*money* because the HI Druid Hills employee provided discounted rooms in exchange for drugs and money, and the HI Cumberland employee provided *free* rooms in exchange for sex. Am. Compl. ¶¶ 188, 208. These rogue employees were enriching themselves at the expense of the Hampton Inns and Hilton.

The "knowingly benefits" element requires a causal relationship between affirmative conduct furthering the sex-trafficking venture and receipt of a benefit, with actual or constructive knowledge of that causal relationship. *Geiss*, 383 F. Supp. 3d at 169; *see also Canosa v. Ziff*, No. 18 civ. 4115 (PAE), 2019 WL 498865, at *24 (S.D.N.Y. Jan. 28, 2019). *Any* receipt of a benefit, alone, is not enough.

Both *Geiss* and *Canosa* involved TVPRA claims brought against corporations for their alleged participation in Harvey Weinstein's sexual abuse scandal. In *Geiss*, the court dismissed the claim against The Weinstein Company ("TWC") even though it "undoubtedly benefited" from a sex trafficking venture perpetrated by Weinstein (through the profits of Weinstein making movies for TWC), because that benefit came "*in spite of* his alleged predations," not because of them. 383 F. Supp. 3d at 169–70. The possibility of trafficking "diverted company resources toward supervision of H. Weinstein and away from business activities, and exposed TWC

---

child-trafficking.html. As a result of that incident, Hilton revamped its policies to further aid in the fight against human trafficking. *See supra* note 2.

to potential liability." *Id.* at 170.  In *Canosa v. Ziff*, a different court came out the other way on TWC's liability, holding that it saw a symbiotic link between Harvey's sexual assaults and TWC's benefit because TWC kept Harvey Weinstein happy so they could make money with him.  2019 WL 498865, at *24–25.

In each case, the court looked to a causal relationship between the participation in a sex trafficking venture with the benefit received.  *Geiss*, 383 F. Supp. 3d at 169–70; *Canosa*, 2019 WL 498865, at *24.  The claims against Hilton must be dismissed because any possible benefit Hilton was paid through its franchise contracts came *in spite* of trafficking, not because of it.  Sex trafficking proceeds were not paid to Hilton; nor can Hilton possibly know the end use of a particular room after it is rented out by a franchisee.  There was no knowing benefit.

### 2.  "Participation in a Venture"

The second element Plaintiff must plausibly allege is that Hilton participated in a trafficking venture.  A trafficking "venture" is defined as "any group of two or more individuals associated in fact."  18 U.S.C. § 1591(e)(6).  And "participation in a venture" means "knowingly assisting, supporting, or facilitating a violation of subsection (a)(1) [sex trafficking]."  18 U.S.C. § 1591(e)(4).

The Sixth Circuit in *United States v. Afyare* rejected the notion that a sex trafficking venture could be "any 'association' of people for any purpose," instead

holding that "participation" requires an "'overt act' that furthers the trafficking aspect of the venture," not "mere negative acquiescence."  632 F. App'x 272, 285–86 (6th Cir. 2016).   Unless the defendant engages in "some aspect of the sex trafficking," it is not participating.  *Id*.  *Afyare* has been followed by district courts across the country.  *See Geiss*, 383 F. Supp. 3d at 169–70; *Canosa,* 2019 WL 498865, at *24–25; *Noble*, 335 F. Supp. 3d at 524; *Ratha*, 2017 WL 8293174, at *4.

Plaintiff has not identified any interactions between Hilton and the traffickers. *See Noble*, 335 F. Supp. 3d at 524 (dismissing claim against Weinstein's brother who benefited from, but did not know of, Weinstein's actions); *Lawson*, 2018 WL 2012869, at *12.  General allegations about the sex trafficking industry at large do not suffice to allege Hilton participated in the specific ventures here.  *See Ratha*, 2017 WL 8293174, at *5.  Nor can the existence of franchise agreements between Hilton and the Hampton Inns constitute participation in a venture.  *Geiss*, 383 F. Supp. 3d at 169.  Because Plaintiff does not allege any overt acts in furtherance of sex trafficking by Hilton, Counts 17, 18, 20, and 21 must be dismissed.

### 3.  "Knowing or in Reckless Disregard" and "Knew or Should Have Known"

On Counts 17 and 20, Hilton cannot be liable under Section 1591(a)(2) unless it had actual knowledge or reckless disregard of the sex trafficking.  18 U.S.C.

§ 1591(a).  This is the same *mens rea* analysis addressed in Section I.A, *supra*.  The Amended Complaint does not plausibly allege this element.

On Counts 18 and 21, Plaintiff erroneously identifies the claims as "negligent financial beneficiary claim[s]."  Section 1595(a) does not have a negligence standard.  Federal courts have used the "should have known" standard in Section 1595(a) similarly to the reckless disregard standard from Section 1591(a)(2).  *See Ricchio v. McLean*, 853 F.3d 553, 556 (1st Cir. 2017) (using a reckless disregard standard); *Noble*, 335 F. Supp. 3d at 524 ("Such conduct must have been undertaken with the knowledge, or in reckless disregard of the fact, that it was furthering the alleged sex trafficking venture."); *Lawson*, 2018 WL 2012869, at *11–14 (dismissing a claim against an individual defendant because the facts did not show knowledge or reckless disregard); *Jean-Charles*, 937 F. Supp. 2d at 288; *cf. Gilbert v. U.S. Olympic Comm.*, 18-cv-00981-CMA-MEH, 2019 WL 4727636, at *15–16 (D. Colo. Sept. 27, 2019) (using reckless disregard standard for Section 1595 claim).  Plaintiff does not plausibly allege that Hilton knew or recklessly disregarded that it was participating in sex trafficking ventures.  *See* Section I.A, *supra*.

Even if the Court were to treat the "should have known" standard in Section 1595 as mere negligence, it fails as a matter of Georgia law.  As discussed in Section III, *infra*, only the "owner or occupier" of land owes a duty of care to invitees.  *See*

O.C.G.A. § 51-3-1.  Hilton is neither the owner nor occupier of the Hampton Inns. *Ramcke v. Georgia Power Co.*, 703 S.E.2d 13, 16 (Ga. Ct. App. 2010) (holding parent corporation of premises owner owed no duty on premises liability claim).

## II.  Plaintiff has no possibility of recovery against Hilton on her Georgia RICO claims (Counts 32–35).

Plaintiff alleges that Hilton violated two provisions of Georgia RICO: O.C.G.A. § 16-14-4(a) and O.C.G.A. § 16-14-4(c).  Under Section 16-14-4(a), it is "unlawful for any person, through a pattern of racketeering activity or proceeds derived therefrom, to acquire or maintain, directly or indirectly, any interest in or control of any enterprise, real property, or personal property of any nature, including money."  O.C.G.A. § 16-14-4(a).  "[A] 'pattern of racketeering activity' means that there have been at least two acts of racketeering activity that are interrelated and that were done 'in furtherance of one or more incidents, schemes, or transactions.'" *Wylie v. Denton*, 746 S.E.2d 689, 693 (Ga. Ct. App. 2013) (quoting O.C.G.A. § 16-14-3(8)(A)).  Section 16-14-4(c) prohibits conspiring to violate Georgia RICO's other provisions.

First and foremost, Plaintiff's Georgia RICO claims are barred by the applicable five-year statute of limitations.  O.C.G.A. § 16-14-8.  Plaintiff alleges injuries from 2010–2012, ending more than seven years before Plaintiff brought this

action in 2019.  At the latest, Plaintiff's injuries accrued in 2012.  *S. Intermodal Logistics, Inc. v. D.J. Powers Co., Inc.*, 555 S.E.2d 478, 482 (Ga. Ct. App. 2001).

In addition to the time bar, Counts 32–35 do not state cognizable claims against Hilton.  *First*, the substantive RICO claims are flawed because there is not a single well-pleaded allegation that Hilton committed a predicate act of racketeering activity.  Paragraphs 431–449 list the purported predicate offenses, but the allegations are entirely conclusory: they consist of recitations of the elements with no actual facts.  *See Iqbal*, 556 U.S. at 678.  Plaintiff paints all thirty defendants with the same brush without saying what any defendant is alleged to have *actually done*.

For example, paragraphs 447–448 allege as a predicate act "pandering," but do nothing more than recite the elements of the offense and insert the names of defendants.[8]  Each alleged predicate act follows this pattern—a textbook example of

---

[8] Paragraph 447: "Defendants . . . knowingly assembled Jane Doe . . . at a fixed place for the purpose of being solicited by others to perform an act of prostitution. . . ."  Am. Compl. ¶ 447.

O.C.G.A. § 16-6-12: "A person commits the offense of pandering when he or she . . . knowingly assembles persons at a fixed place for the purpose of being solicited by others to perform an act of prostitution."

Paragraph 448(f): "Knowing that persons were being assembled at the Hampton Inn (NDH Atlanta) to perform sexual acts for money or other items of value, the Hampton Inn (NDH Atlanta) Defendants aided and abetted the commission of those acts."  *Id.* ¶ 448(f).

Paragraph 448(g): "Knowing that persons were being assembled at the Hampton Inn (CP Atlanta) to perform sexual acts for money or other items of value, the Hampton Inn (CP Atlanta) Defendants aided and abetted the commission of those acts."  *Id.* ¶ 448(g).

what is not allowed under the pleading standard in *Iqbal*, 556 U.S. at 678.  Am.

Compl. ¶¶ 431–449.  Further, "generic" invocations of the statutory language do not

adequately inform a defendant of the actual criminal acts they are charged with

committing.  *State v. Delaby*, 681 S.E.2d 645, 648 (Ga. Ct. App. 2009).  Without

specific factual allegations against Hilton itself, the RICO claims must be dismissed.

*See Simpson v. Sanderson Farms, Inc.*, 744 F.3d 702, 708 (11th Cir. 2014); *Stewart*

*Ausband Enters., Inc. v. Holden*, 826 S.E.2d 138, 145 (Ga. Ct. App. 2019).

    *Second*, Hilton cannot be held liable under Georgia RICO, as a matter of law,

except by certain acts of its directors or managerial officials.  *See* O.C.G.A. § 16-2-

22(a)(2).  The law on corporate liability for Georgia RICO is clearly spelled out in

*Cobb Cty. v. Jones Group P.L.C.*, 460 S.E.2d 516 (Ga. Ct. App. 1995):

> Although this is a civil suit, RICO predicate acts are criminal offenses.
> If the court is guided by O.C.G.A. § 16-2-22, "Criminal Responsibility
> of Corporations," a corporation may be *criminally* prosecuted as a party
> to a crime by certain acts of its agents in two situations: (1) where
> legislative intent clearly imposes criminal liability, (RICO does not
> contain in its definition any indication of a legislative purpose to impose
> criminal liability on a corporation) or (2) by certain acts of its directors
> or managerial officials . . . .

*Cobb Cty.*, 460 S.E.2d at 521; *see also Duvall v. Cronic*, 820 S.E.2d 780, 790 (Ga.

Ct. App. 2018) ("[RICO] liability attaches if the employer's board of directors or

managerial official, acting within the scope of that person's employment, authorized,

requested, commanded, performed, or recklessly tolerated the employee's acts.").

The Georgia legislature has not articulated a clear intent to impose corporate criminal liability for RICO. *Cobb Cty.*, 460 S.E.2d at 521. As a result, none of the predicate criminal acts can support a RICO suit against Hilton unless Plaintiff plausibly alleges that they were perpetrated by a member of the board of directors or a managerial official of Hilton who was acting within the scope of employment. O.C.G.A. § 16-2-22(a)(2). There is no allegation that any agent of Hilton—let alone a *director* or *manager*—committed any of the predicate acts.

The conspiracy claims fare no better. "Under Georgia law, a person may be found liable for RICO conspiracy if they knowingly and willfully join a conspiracy which itself contains a common plan or purpose to commit two or more predicate acts." *Wylie*, 746 S.E.2d at 693 (citations omitted). The allegations that the defendants associated with the Hampton Inns engaged in RICO conspiracies do not plausibly allege criminal agreements between the Hilton and other defendants where an "obvious alternative explanation" for the alleged parallel conduct was that the alleged individual actors engaged in an "independent pursuit of their own economic self-interest." *Am. Dental Ass'n*, 605 F.3d at 1295 (citation omitted). In *American Dental*, the Eleventh Circuit held that allegations that defendants engaged in a RICO conspiracy by employing a similar methodology to process insurance reimbursement claims did not "plausibly suggest" a "meeting of the minds." *Am. Dental*, 605 F.3d

at 1294–95.   Rather, the "parallel conduct" was "equally indicative of rational independent action as it is concerted, illegitimate conduct," and thus the claim was properly dismissed.  *Id.* at 1295.

The vast majority of the RICO sections are legal conclusions or conclusory recitations of the elements against each Defendant.   Following the two-pronged approach in *Iqbal*, "[a]fter eliminating the wholly conclusory allegations of conspiracy, we turn to Plaintiffs' remaining factual allegations."  *Id.* at 1294.   There are few.   Plaintiff does not allege any "particular facts" describing "the manner in which" the defendants associated with the Hampton Inns formed an alleged sprawling conspiracy to commit a pattern of racketeering.  *See Delaby*, 681 S.E.2d at 648.   Indeed, there are no allegations of coordinated conduct or meetings between Hilton and the other defendants.   Nor are there any allegations of individuals at Hilton working together to commit any of the alleged acts.

In short, the Amended Complaint describes rogue employees engaging in parallel, uncoordinated, and unlawful conduct with no predicate acts performed by any other defendant.   These allegations do not "plausibly suggest" a conspiracy involving these defendants.   At best, they show that the alleged individual actors *independently* pursued their "own economic self-interest": violating company policy

and engaging in illegal conduct in exchange for drugs, money, and sex. *Am. Dental*, 605 F.3d at 1294.  The Georgia RICO claims fail as a matter of law.

## III. Plaintiff has no possibility of recovery against Hilton on her negligence claims (Counts 39–40).

Plaintiff's negligence claims (Counts 39–40) are barred by the applicable two-year statute of limitations.  O.C.G.A. § 9-3-33.  Plaintiff alleges injuries from 2010–2012, ending more than seven years before Plaintiff brought this action in 2019.

In addition to the time bar, Counts 39–40 do not state cognizable claims against Hilton.  Plaintiff's negligence claims are premises liability claims based on the duty a premises owner owes to its invitees to exercise due care to keep the premises safe from unlawful acts.  *See* Am. Compl. ¶¶ 623–624, 636–637.  The duty owed by a landowner to its invitee is set out in O.C.G.A. § 51-3-1, and applies only to the "owner or occupier" of land.  Hilton cannot be directly liable for premises liability negligence because Hilton is not the owner or occupier of the land, and the Amended Complaint does not so allege.  And as argued in Section IV, *infra*, there are no facts pled that, if true, would make Hilton vicariously liable for the acts of the Hampton Inns.  *See Ramcke*, 703 S.E.2d at 16.  Counts 39–40 must be dismissed because there was no duty for Hilton to breach.

## IV. All counts against Hilton fail because they do not allege agency or vicarious liability.

Plaintiff's claims against Hilton all rely on indirect liability, attempting to hold Hilton liable for acts that occurred at franchise hotels by a franchise employees. Taking all the well-pleaded allegations in the Amended Complaint as true, Plaintiff has not plausibly pled a relationship between Hilton and the Hampton Inns that would make Hilton vicariously liable. Nor has Plaintiff attempted to plead that participating in a sex trafficking venture would be within the scope of Hilton's business. Plaintiff thus has no possibility of recovery on any claim against Hilton.

Plaintiff does not allege that Hilton had anything beyond a franchise relationship with either hotel. *See* Am. Compl. ¶¶ 38, 43–47, 194, 198–199, 213. Hilton does not own, operate, manage, or control the Hampton Inns. Rather, Hilton has contractual relationships with the franchisee hotels where the franchisee hotels pay Hilton for the right to use Hilton's name brand and agree to a set of brand standards.[9] The franchisees have their own independent ownership, control, and management. "A franchisor does not become liable for the acts of its franchisee merely because of the franchisor/franchisee relationship." *Summit Auto. Grp. v. Clark*, 681 S.E.2d 681, 687 (Ga. Ct. App. 2009). Instead, vicarious liability can only

---

[9] *See* FRANCHISE DISCLOSURE DOCUMENT HAMPTON INN (2019), *available at* https://www.hilton.com/en/corporate/development/disclosure-documents/.

be established by showing an agency or alter ego relationship.  *See id.*  There is no allegation that the Hampton Inns were agents or alter egos of Hilton.  *See* Am. Compl. ¶¶ 38, 43–47, 194, 198–199, 213.

Georgia law requires a showing that the principal controls the "time, manner, and method of [the franchisee's] day-to-day-operations," *DaimlerChrysler Motors Co., LLC v. Clemente*, 668 S.E.2d 737, 745 (Ga. Ct. App. 2008), "as distinguished from the right merely to require results in conformity to the contract," *McGuire v. Radisson Hotels Intern., Inc.*, 435 S.E.2d 51, 53 (Ga. Ct. App. 1993) (citations omitted).  Courts have held time and again that franchise contracts do not create that control.  *See DaimlerChrysler*, 668 S.E.2d at 745.  Plaintiff does not allege that Hilton exerted control over the method and manner by which the Hampton Inns ran their day-to-day operations nor does it allege that Hilton supervised the front-desk employees.[10]

Moreover, *even if* there were an agency relationship between the Hampton Inns and Hilton, Georgia law requires a plaintiff to prove the agent was acting (1) within the scope of the principal's business, and (2) in furtherance of the principal's

---

[10]  Indeed, Hilton's publicly-available Franchise Disclosure Document for Hampton Inn franchises makes clear that no agency relationship exists between Hilton and Hampton Inn franchises, and that Hilton does not have the right to direct, supervise, manage, dictate, or control the franchisee's employees. FRANCHISE DISCLOSURE DOCUMENT HAMPTON INN (2019), *available at* https://www.hilton.com/en/corporate/development/disclosure-documents/.

business.  *Piedmont Hosp., Inc. v. Palladino*, 580 S.E.2d 215, 217 (Ga. 2003).  Here, Plaintiff cannot allege, and has not alleged, that participating in a sex trafficking venture (which is both illegal and contrary to Hilton's stated policies) would be within the scope of Hilton's business, that Hilton directed or authorized the Hampton Inns or their employees to engage in sex trafficking ventures, or that Hilton desired the Hampton Inns or their employees to participate in sex trafficking ventures.

"If a tortious act is committed not in furtherance of the employer's business, but rather for purely personal reasons disconnected from the authorized business of the master, the master [is] not . . . liable."  *Piedmont Hosp., Inc.*, 580 S.E.2d at 216–18 (citations omitted) (holding as a matter of law that a hospital employee's sexual misconduct with a patient was not in furtherance of the hospital's business). Following *Piedmont Hospital*, this Court has granted Rule 12(b)(6) motions to dismiss with allegations of other sexually abusive conduct.  *See Doe v. Fulton-Dekalb Hosp. Auth.*, 628 F.3d 1325, 1334–35 (11th Cir. 2010); *Brons v. U.S.*, 1:14-cv-00864, 2015 WL 630433, at *5–6 (N.D. Ga. Feb. 12, 2015).  This Court has also held that the soliciting of bribes is not within the scope of an employer's business. *See Ahmed v. Air France-KLM*, 165 F. Supp. 3d 1302, 1310 (N.D. Ga. 2016).

Intentionally tortious conduct is fundamentally not in furtherance of Hilton's business.  *See id.*; *Jean-Charles*, 937 F. Supp. 2d at 286 (dismissing vicarious

liability claim against religious organizations in sex trafficking case because trafficking of students could not be in furtherance of the defendants' business as a matter of law).  The Hampton Inn employees who allegedly took bribes of drugs, money, and sex to act as lookouts for the sex traffickers and provided discounted or free rooms were not acting in furtherance of Hilton's business, but their own personal greed or lust.  Thus, as a matter of law, the allegations do not give rise to vicarious liability by Hilton and all claims against Hilton should be dismissed.

## CONCLUSION AND PRAYER

Hilton has been—and will continue to be—an active force in the fight against human trafficking.  Hilton is also extremely sympathetic to Plaintiff's victimization. But Plaintiff's Amended Complaint paints with an impermissibly broad brush, asserting criminal and intentionally tortious conduct by Hilton along with dozens of other defendants, without any well-pleaded allegations that Hilton actually had any part of it.  After wading through the hundreds of pages of conclusory assertions in the Amended Complaint, it contains nothing substantive to justify these serious allegations against Hilton.  And that is because Hilton was not complicit in Plaintiff's trafficking.  For the foregoing reasons, Hilton respectfully requests that the Court dismiss Counts 16, 17, 18, 19, 20, 21, 32, 33, 34, 35, 39, and 40 against Hilton.

Dated:  December 17, 2019

Respectfully submitted,

/s/ Jamila M. Hall

Jamila M. Hall
Georgia Bar No. 319053
JONES DAY
1420 Peachtree Street NE
Suite 800
Atlanta, GA 30309
Telephone:  +1.404.581.8465
Facsimile:  +1.404.581.8330
Email:  jhall@jonesday.com

Nicole M. Perry*
Texas State Bar No. 24056367
JONES DAY
717 Texas Street
Suite 3300
Houston, TX  77002
Telephone:  +1.832.239.3939
Facsimile:   +1.832.239.3600
Email:  nmperry@jonesday.com

Bethany K. Biesenthal*
Illinois Bar No. 6282529
JONES DAY
77 West Wacker Drive
Suite 3500
Chicago, IL 60601
Telephone:  +1.312.782.3939
Facsimile:  +1.312.782.8585
Email:  bbiesenthal@jonesday.com

*Application for admission pro hac vice pending

ATTORNEYS FOR DEFENDANTS
HILTON FRANCHISE HOLDING
LLC, HILTON DOMESTIC
OPERATING COMPANY INC., AND
HILTON WORLDWIDE HOLDINGS
INC.

## **CERTIFICATE OF COMPLIANCE**

I hereby certify, pursuant to L.R. 5.1B and 7.1D of the Northern District of Georgia, that the foregoing document complies with the font and point selections approved by the Court in L.R. 5.1B.  The foregoing pleading was prepared on a computer using 14-point Times New Roman font.

Prepared this 17th day of December, 2019.

*/s/ Jamila M. Hall*
Jamila M. Hall

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 17th, 2019, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send electronic notification to all attorneys of record in the above-captioned case.

/s/ *Jamila M. Hall*
Jamila M. Hall