**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| JANE DOE 3, | |
| Plaintiff, | |
| v. | Civil Action No. 1:19-cv-03843-WMR |
| RED ROOF INNS, INC., et al., | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS WYNDHAM HOTELS & RESORTS, INC. AND
MICROTEL INNS AND SUITES FRANCHISING, INC.'S
<u>MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT</u>**

Plaintiff asserts claims for alleged violations of the Trafficking Victims Protection Reauthorization Act ("TVPRA"), violations of the Georgia RICO Act ("Georgia RICO"), and negligence against Defendants Wyndham Hotels & Resorts, Inc. ("WHRI") and Microtel Inns and Suites Franchising, Inc. ("MISF"). The Court should dismiss these claims for four reasons: (1) the Amended Complaint relies on improper shotgun pleading; (2) Plaintiff has not stated a viable TVPRA claim because there are no well-pled facts giving rise to a reasonable inference that WHRI or MISF committed sex trafficking crimes or knowingly benefited from participating in a sex trafficking venture; (3) Plaintiff's Georgia RICO claims against WHRI and MISF are time-barred; (4) Plaintiff has not alleged that WHRI and MISF committed any RICO predicate acts or conspired to do so; and (5) the Amended Complaint contains no well-pled facts plausibly suggesting that WHRI or MISF breached any duty, or that any such breach was the proximately caused Plaintiff's alleged injuries.

## STATEMENT OF PLAINTIFF'S ALLEGATIONS

WHRI is the ultimate parent company of MISF. *See* Dkt. 70, at ¶¶ 30, 35. MISF is the franchisor of the Microtel® hotel brand. *See* Dkt. 70, at ¶ 36. Franchisors, like MISF, do not own, operate, manage, or control the day-to-day operations of their franchisees. *See* Dkt. 70, at ¶¶ 31-37. Perhaps recognizing that

1

fact, Plaintiff's claims hinge on the allegation that WHRI and MISF "received a percentage of the revenue generated by the operation" of Microtel-branded hotels. *See* Dkt. 70, at ¶ 154. Plaintiff also alleges that MISF has the right to conduct occasional quality-assurance inspections of their franchisees' facilities. *See* Dkt. 70, at ¶ 175. Plaintiff does not allege that WHRI or MISF were engaged in her trafficking, which allegedly last occurred in 2012. *See* Dkt. 70, at ¶ 86.[1] Rather, Plaintiff alleges that Microtel hotel staff (i.e., staff of the franchisee) were paid to serve as "lookouts" for the traffickers and otherwise permitted trafficking at the hotel. *See* Dkt. 70, at ¶¶ 159-161.  Moreover, the Amended Complaint cites three alleged online reviews that reported the occurrence of potential commercial sex activity at the Microtel hotel, which range from September 2011 to July 2014. *See* Dkt. 70, at ¶ 177. While those reviews allegedly report potential instances of prostitution, they do not allege forced or coerced commercial sex activity.

The Amended Complaint groups WHRI and MISF together with third parties (i.e., Defendant Kuzzins Buford, LLC and ten John Doe defendants) and defines them collectively as the "Microtel Defendants." *See* Dkt. 70, at ¶ 28. The Amended Complaint then proceeds to assert claims against the "Microtel

---

[1] In an apparent typographical error, the Amended Complaint states in one instance (inconsistently with the rest of the pleading) that the alleged trafficking occurred through 2016. *See* Dkt. 70, at ¶ 157.

2

Defendants" collectively.

## LEGAL STANDARD

District courts must guard against "shotgun" pleadings, which fail to fairly notify defendants of the allegations against them. *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1322-23 (11th Cir. 2015). Shotgun pleading includes complaints that purport to bring "multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions . . . ." *Id.* at 1323. A complaint that "indiscriminately groups the defendants together" in this way does not comply with Rule 8. *Joseph v. Bernstein*, 612 F. App'x 551, 555 (11th Cir. 2015).

While courts accept well-pled factual allegations as true and may draw reasonable inferences in a plaintiff's favor, a complaint must state a claim for relief "that is plausible—and not merely possible—on its face." *Almanza v. United Airlines, Inc.*, 851 F.3d 1060, 1066 (11th Cir. 2017) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *accord Fed. Trade Comm'n v. Hornbeam Special Situations, LLC*, 391 F. Supp. 3d 1218, 1222 (N.D. Ga. 2019) (Ray, J.). "The plausibility standard is met only where the facts alleged enable 'the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Simpson v. Sanderson Farms,*

*Inc.*, 744 F.3d 702, 708 (11th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678); *see also Hornbeam*, 391 F. Supp. 3d at 1222. "[N]aked assertion[s] devoid of further factual enhancement" are insufficient. *Iqbal*, 556 U.S. at 678. "Rather, a complaint must present sufficient factual matter, accepted as true, to 'raise a right to relief above the speculative level.'" *Simpson*, 744 F.3d at 708 (quoting *Twombly*, 550 U.S. at 555). Legal conclusions are insufficient. *Hornbeam*, 391 F. Supp. 3d at 1222.

"If the court determines that well-pleaded facts, accepted as true, do not state a claim that is plausible, the claims must be dismissed." *SmileDirectClub, LLC v. Georgia Bd. of Dentistry*, 1:18-CV-02328-WMR, 2019 WL 3557892, at *2 (N.D. Ga. May 8, 2019) (Ray, J.); *Valentine Communications, LLC v. Six Continents Hotels, Inc.*, 389 F. Supp. 3d 1223, 1229 (N.D. Ga. 2019) (Ray, J.).

## ARGUMENT

### I.    Plaintiff's Claims Are Impermissibly Based On Shotgun Pleading.

The Eleventh Circuit has held that "[a] complaint [that] indiscriminately groups the defendants together [] fails to comply with the minimum standard of Rule 8," and warrants dismissal under Rule 12(b)(6). *Joseph*, 612 F. App'x at 553. *See also, e.g.*, *De Leon v. All Stars Glob. Techs., Inc.*, 4:17-CV-0184-HLM, 2017 WL 10574524, at *5 n.1 (N.D. Ga. Nov. 28, 2017) (directing Plaintiff to refrain

from using group pleading); *Paul v. Mayo Clinic*, 3:15-CV-1244-HES-MCR, 2016 WL 11431491, at *3 (M.D. Fla. June 16, 2016) ("Plaintiff's claims and allegations are all lodged, without differentiation, against all three Defendants. Generally, this is improper, and Rules 8 and 9 require a plaintiff to differentiate allegations among multiple defendants so as to give fair notice to each Defendant of the allegations against it."). Conclusory allegations of alter ego and conspiracy do not cure such deficiencies. *See, e.g.*, *Stansell v. BGP, Inc.*, 8:09-CV-2501-T-30AEP, 2010 WL 2791850, at *1 (M.D. Fla. July 14, 2010).

The Amended Complaint improperly asserts allegations against groups of defendants, collectively:

> "***Defendants*** intentionally turn a blind eye to safety and security issues at their hotels . . . ." Dkt. 70, at ¶ 79 (emphasis added).

> "***Defendants*** have known what signs to look for and which policies to implement in order to prevent, identify, and deter sex trafficking in their hotels . . . ." Dkt. 70, at ¶ 80 (emphasis added).

The Amended Complaint also treats the so-called "Microtel Defendants" as though they are a single entity:

> "The ***Microtel Defendants*** violated 18 U.S.C. § 1591(a)(1) by knowingly harboring and maintaining persons at the Microtel (Alpharetta) . . . ." Dkt. 70, at ¶ 357 (emphasis added); *see also id.* at ¶¶ 358-62, 364-71, 373-79, 527-36, 538-42, 603-14.

Such shotgun allegations deprive WHRI and MISF of the fair notice the

Eleventh Circuit requires. *See, e.g.*, *Joseph*, 612 F. App'x at 553. Moreover, these allegations reflect bare recitations of legal elements, which are *not* presumed true for purposes of a motion to dismiss. *Franklin v. Curry*, 738 F.3d 1246, 1248 n.1 (11th Cir. 2013). Plaintiff must assert her claims against WHRI and MISF specifically. She has not done so. Plaintiff's use of shotgun pleading warrants dismissal.

## II.     The Amended Complaint Does Not Allege Plausible TVPRA Claims Against WHRI Or MISF.

The TVPRA is a criminal statute that also gives rise to civil claims. *See* 18 U.S.C. §§ 1591(a), 1595(a); *see also Arreguin v. Sanchez*, 398 F. Supp. 3d 1314, 1325 n.4 (S.D. Ga. 2019). It targets forced or coerced commercial sex activity by adults, and commercial sex activity by minors. 18 U.S.C. § 1591(a). It does not address sex crimes in general (e.g., prostitution). Section 1591(a) of the TVPRA, which criminalizes sex trafficking, provides as follows:

Whoever knowingly –

(1)     in or affecting interstate or foreign commerce . . . recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by a means a person; or

(2)     benefits, financially or by receiving anything of value, from participation in a venture which has engaged in an act described in violation of paragraph (1),

knowing, or, except where the act constituting the violation of

paragraph (1) is advertising, in reckless disregard of the fact that means of force, threats of force, coercion described in subsection (e)(2), or any combination of such means will be used to cause the person to engage in a commercial sex act, or that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act, shall be punished as provided in subsection (b).

18 U.S.C. § 1591(a).

Section 1595(a), the TVPRA's civil remedy provision, in turn provides:

An individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (or whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) in an appropriate district court of the United States and may recover damages and reasonable attorneys['] fees.

18 U.S.C. § 1595(a). Section 1595 triggers civil liability for those who violate

Section 1591(a), as well as those who knowingly benefit from their "participation

in a venture" that they should have known has violated Section 1591(a). *Id.*

Plaintiff's TVPRA claims against WHRI and MISF —two predicated on criminal

violations of Sections 1591(a)(1) and 1591(a)(2), and one standalone civil claim

under Section 1595(a)—do not meet these requirements.[2]

---

[2] Within those counts, the Amended Complaint asserts that WHRI and MISF are liable for "aiding and abetting" alleged violations of those provisions by other, unrelated individuals and entities. The TVPRA does not provide for civil "aiding and abetting" liability, which Plaintiff's counsel has since conceded in parallel proceedings. *See, e.g., Jane Doe 2 v. Red Roof Inns, Inc., et al.*, 1:19-cv-03841-

7

### A.   Plaintiff fails to allege a plausible claim for violating Section 1591(a)(1) (Count 13).

While Section 1591(a)(1) itself does not give rise to a civil claim, a civil claim may be brought under Section 1595(a) based on a violation of Section 1591(a)(1). 18 U.S.C. § 1595(a) ("An individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator . . . .").[3] To state a claim for a violation of Section 1591(a)(1), a plaintiff must plead that a defendant "knowingly recruited, enticed, harbored, transported, provided, obtained, or maintained by any means a person; (2) knowing, or in reckless disregard of the fact that, means of force, threats of force, fraud . . . or any combination of such means will be used; (3) to cause the person to engage in a commercial sex act." *Noble v. Weinstein*, 335 F. Supp. 3d 504, 515 (S.D.N.Y. 2018).

---

WMR (N.D. Ga.), Dkt. 180, at 12 ("Plaintiff's use of 'aiding and abetting' in paragraph 420 is not intended to expand liability to any entity not already encompassed by the plain language of § 1591(a)(2) . . . ."); *see also Noble*, 335 F. Supp. 3d at 525 ("[A]iding and abetting liability is not provided for in Section 1595. And 'when Congress enacts a statute under which a person may sue and recover damages from a private defendant for the defendant's violation of some statutory norm, *there is no general presumption that the plaintiff may also sue aiders and abettors*.'") (emphasis in original) (quoting *Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 183 (1994)).

[3] Plaintiff does not have standing to pursue a claim directly under a criminal statute like Section 1591. *See Diamond v. Charles*, 476 U.S. 54, 65 (1986). Plaintiff apparently recognizes this, as demonstrated by the references to Section 1595(a) in the headings of Counts 13-14 and 16-17.

The Amended Complaint alleges that the "Microtel Defendants" "knowingly harbor[ed] and maintain[ed]" Plaintiff. *See* Dkt. 70, at ¶ 357. Even assuming *arguendo* that the mere rental of a room to someone who commits sex trafficking crimes can constitute "harboring" or "maintaining" for purposes of Section 1591(a)(1) as Plaintiff's counsel has argued elsewhere (it cannot—*see Jane Doe 2 v. Red Roof Inns, Inc., et al.*, 1:19-cv-03841-WMR (N.D. Ga.), Dkt. 191, at 3-4), Plaintiff's claim still fails as to WHRI and MISF. As the Amended Complaint acknowledges, none of these defendants owned, operated, controlled the day-to-day operations of, or maintained a presence at the hotels in question. Nor did they rent any rooms to Plaintiff's traffickers. Thus, WHRI and MISF could not have "harbor[ed]" or "maintain[ed]" Plaintiff in violation of Section 1591(a).

Because the Amended Complaint lacks any well-pled allegations that WHRI or MISF knowingly harbored or maintained Plaintiff in violation of Section 1591(a), Count 10 should be dismissed.

**B.     Plaintiff fails to allege a plausible claim for a violation of Section 1591(a)(2) (Count 14), or a standalone civil claim under Section 1595(a) (Count 15).**

As with Section 1591(a)(1), Section 1591(a)(2) does not give rise to a civil claim, but a civil claim may be brought under Section 1595(a) based on a violation of Section 1591(a)(2). Section 1595(a) also provides for a standalone civil claim,

and the elements for such a claim are similar to those necessary to establish a violation of Section 1591(a)(2). Both require well-pled factual allegations that the defendant (i) knowingly benefited (ii) from participation in a sex-trafficking venture that trafficked the plaintiff. *See* 18 U.S.C. §§ 1591(a)(2), 1595(a); *Noble*, 335 F. Supp. 3d at 523-24 (quoting *United States v. Afyare*, 632 F. App'x 272, 283 (6th Cir. 2012)). The difference is the third element. A violation of Section 1591(a)(2) requires a showing that the defendant *knew or recklessly disregarded* that the plaintiff would be forced or coerced to commit commercial sex acts. A standalone civil claim under Section 1595(a), on the other hand, requires that the defendant "*should have known*" that the plaintiff was forced or coerced to commit such acts. The Amended Complaint does not contain well-pled factual allegations sufficient to support claims for Section 1591(a)(2) violations or standalone civil claims under Section 1595(a); Counts 14 and 15 should be dismissed.

### 1. WHRI and MISF did not benefit, knowingly or otherwise, from Plaintiff's alleged sex trafficking.

To establish a violation of Section 1591(a)(2) or a standalone civil claim under Section 1595(a), the plaintiff must show that "the defendant received a valuable benefit" from participation in sex trafficking. *See, e.g., United States v.*

*Flanders*, 752 F.3d 1317, 1338 (11th Cir. 2014).[4] The controlling question is "whether [the trafficker] provided . . . benefits to [the defendant] *because of* [the defendant's alleged] facilitation of [] sexual misconduct." *Geiss v. Weinstein Co. Holdings LLC*, 383 F. Supp. 3d 156, 170 (S.D.N.Y. 2019) (emphasis in original).

The Amended Complaint does not include well-pled factual allegations that WHRI and MISF knowingly benefited from Plaintiff's alleged trafficking. While the Amended Complaint may allege that franchisee employees benefited from Plaintiff's alleged trafficking (e.g., through payments for serving as "lookouts"), the Amended Complaint makes no such allegation as to WHRI or MISF. At most, the Amended Complaint alleges that WHRI and MISF generally benefit from the rental of rooms at Microtel franchised hotels, which is insufficient. *See Geiss*, 383 F. Supp. at 170; *Kolbek v. Twenty First Cent. Holiness Tabernacle Church, Inc.*, No. 10 Civ. 4124, 2013 WL 6816174, at *16 (W.D. Ark. Dec. 24, 2013) ("Nor have Plaintiffs offered evidence to show that Defendants were compensated 'on account of' the sex acts. . . . The fact that sexual abuse was committed by the ministry's leader and that members of the ministry had their expenses paid for through ministry funds is simply not sufficient to establish a violation of 18 U.S.C.

---

[4] In an apparent typographical error, the Eleventh Circuit cited Section 1591(a)(2) as Section 1592(a)(2).

§ 1591.").

Simply, Plaintiff's claims against WHRI and MISF are not grounded in well-pled allegations that could give rise to a plausible inference that either of them benefited, knowingly or otherwise, from Plaintiff's alleged trafficking, which is fatal to Plaintiff's Section 1591(a)(2) and Section 1595(a) claims.

### 2.   WHRI and MISF did not participate in a sex trafficking venture.

Participation in a sex trafficking venture requires the commission of an affirmative, overt act in furtherance of the alleged trafficking; nonfeasance or the failure to intervene is not sufficient. *See, e.g.*, *Afyare*, 632 F. App'x at 286 (recognizing that "participation in a venture" requires proof that a defendant "actually participated in a sex trafficking venture"—i.e., that the defendant and trafficker "associated for the purpose of furthering the sex trafficking"—and that "mere negative acquiescence" is not enough). The "participation in a venture" element "targets those who participate in sex trafficking"—not those who have lawful associations with persons who separately commit trafficking crimes, and not those who may derive some sort of benefit from the trafficking and "turn a blind eye to the source of their financial sponsorship." *Id.* at 286; *accord Noble*, 335 F. Supp. 3d at 524; *Ratha v. Phatthana Seafood Co., Ltd.*, CV 16-4271-JFW (ASX),

2017 WL 8293174, at *4 (C.D. Cal. Dec. 21, 2017).

Indeed, the "participation" element cannot be divorced from its "placement and purpose" in the statute. *Afyare*, at 284-85. In *Afyare*, for example, several individuals were criminally charged with violating Section 1591(a)(2). "[T]he prosecution sought to call several witnesses who would identify some group of the defendants and testify to his or her having seen them together, *though for some admittedly non-sex trafficking purpose*." *Id.* at 279. The Sixth Circuit Court of Appeals affirmed the district court's exclusion of that evidence, reasoning that "mere membership in [a] gang or association of two or more defendants is insufficient to prove a venture under Section 1591(a)(2) and to be a participant in the venture, the prosecution has to prove that the defendant committed an 'overt act' to advance the sex trafficking activities charged." *Id.* at 283.

Allegations that Plaintiff's traffickers rented rooms at independently owned and operated Microtel®-branded hotels are insufficient to show that WHRI or MISF—who do not control the day-to-day operations of, and do not maintain a presence at, the hotels in question—participated in Plaintiff's alleged trafficking. MISF's lawful commercial relationship with a franchisee whose employees allegedly committed sex-trafficking crimes cannot serve as a basis for holding WHRI (which has no relationship with Microtel franchisees) or MISF liable under

13

the TVPRA. *See, e.g.*, *Afyare*, 632 F. App'x at 286. Interpreting the "participation in a venture" requirement to include the type of passive conduct alleged as to WHRI and MISF would "create a vehicle to ensnare conduct that the statute never contemplated." *Id.* This failure to allege facts plausibly suggesting that WHRI and MISF actually participated in the sex trafficking venture that trafficked Plaintiff is fatal to Plaintiff's Section 1591(a)(2) and Section 1595(a) claims.

### 3. Nothing supports a plausible inference that WHRI or MISF knew, recklessly disregarded, or should have known of Plaintiff's alleged trafficking.

To state a claim for a violation of Section 1591(a)(2), the complaint must allege facts plausibly suggesting that the defendant *knew or recklessly disregarded* that the plaintiff was being forced or coerced to commit commercial sex acts. *See* 18 U.S.C. § 1591(a)(2). A standalone civil claim under Section 1595(a) requires facts plausibly suggesting that the defendant *should have known* that the plaintiff was being forced or coerced to commit commercial sex acts. *See* 18 U.S.C. 1595(a). It is insufficient to allege that a defendant knew, recklessly disregarded, or should have known that the plaintiff was participating in commercial sex activity (e.g., prostitution) generally.[5]

---

[5] *See, e.g.*, 18 U.S.C. § 1591(e)(2) (defining "coercion" as: "(A) threats of serious harm to or physical restraint against any person; (B) any scheme, plan, or pattern

In *Ricchio v. McLean*, the First Circuit Court of Appeals found that the complaint adequately alleged TVPRA violations against a hotel owner (i.e., not a franchisor) where the hotel owner allegedly witnessed "several [] exhibitions of [] coercive and brutal behavior" by the trafficker, including the plaintiff's plea for help, making it "apparent" that the plaintiff was being held against her will as a "sex slave." 853 F.3d 553, 555-56, 558 (1st Cir. 2017).

The Amended Complaint in this case contains no such allegations against WHRI and MISF. The Amended Complaint concedes that MISF (as a franchisor), as well as WHRI (as MISF's ultimate parent company), do not own, operate, control the day-to-day operations of, or maintain a presence at the hotels at issue. Dkt. 70, at ¶¶ 31-37. Further, WHRI has no relationship, contractual or otherwise, with the owner-operators of the hotel at issue. There is no allegation that WHRI or MISF even knew of or interacted with Plaintiff or her alleged traffickers. The fact that MISF may have had the contractual right to conduct quality-assurance inspections of the facilities in question, as well as the existence of isolated online reviews generally complaining about discrete incidents of potential prostitution over an extended period, are insufficient to plausibly suggest that WHRI or MISF

intended to cause a person to believe that failure to perform an act would result in serious harm to or physical restraint against any person; or (C) the abuse or threatened abuse of law or legal process")).

knew, recklessly disregarded, or should have known that Plaintiff was committing commercial sex acts, let alone that she was forced or coerced to do so against her will. Absent well-pled factual allegations plausibly suggesting that WHRI or MISF knew, recklessly disregarded, or should have known that Plaintiff was being forced to commit commercial sex acts against her will, Plaintiff's TVPRA claims cannot withstand this Motion.

Recent decisions from the Southern District of Ohio, *M.A. v. Wyndham Hotels & Resorts, Inc.,* 2:19-CV-849, 2019 WL 4929297 (S.D. Ohio Oct. 7, 2019), and *H.H. v. G6 Hospitality, LLC*, 2:19-CV-755, 2019 WL 6682152 (S.D. Ohio Dec. 6, 2019), do not change that result. In denying motions to dismiss a standalone civil claim asserted under Section 1595(a), the court applied a pre-*Twombly* dismissal standard, reasoning that "[t]he Court cannot dismiss a complaint for failure to state a claim 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *M.A.*, 2019 WL 4929297, at *1 (quoting *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993)). The opinions issued in *M.A.* and *H.H.* decisions also reflect a fundamental misunderstanding about franchising relationships, referring to a franchisor defendant as the "parent company" of a franchisee. *See H.H.*, 2019 WL 6682152, at *6. The court ultimately denied the motion to dismiss even though

16

there were no well-pled allegations that the moving franchisor defendant should have known about the plaintiff's trafficking, and based the decision instead on allegations made against groups of defendants, a practice that the Eleventh Circuit has explicitly rejected. *Weiland*, 792 F.3d at 1322-23; *Joseph*, 612 F. App'x at 555.

## III.   The Amended Complaint Does Not State A Claim Against WHRI Or MISF Under Georgia RICO (Counts 30-31).

Under Georgia RICO, it is "unlawful for any person, through a pattern of racketeering activity or proceeds derived therefrom, to acquire or maintain, directly or indirectly, any interest in or control of any enterprise, real property, or personal property of any nature, including money." O.C.G.A. § 16-14-4(a). A "racketeering activity," also known as a "predicate act," is the commission of, the attempt to commit, or the solicitation or coercing of another to commit, a "crime which is chargeable by indictment" under one of approximately forty categories of offenses. O.C.G.A. § 16-14-3(9)(A)(i)-(xlii). Additionally, it is unlawful to conspire to violate the substantive provisions of Georgia RICO. O.C.G.A. § 16-14-4(c). RICO conspiracy liability arises only when a person "knowingly and willfully join[s] a conspiracy which itself contains a common plan or purpose to commit two or more predicate acts." *Wylie v. Denton*, 323 Ga. App. 161, 164 (2013); *Rosen v. Protective Life Ins. Co.*, 817 F. Supp. 2d 1357, 1382(II)(G) (N.D. Ga. 2011) (applying the Georgia RICO statute).

17

**A.    Statute of limitations bars Plaintiff's Georgia RICO claims.**

A "civil action brought pursuant to O.C.G.A. § 16-14-6 shall be commenced

up until five years after the conduct in violation of a provision of this chapter

terminated." O.C.G.A. § 16-14-8.[6] The limitations period for a Georgia RICO

claim begins to run when the plaintiff discovers or reasonably should have

discovered that the plaintiff has been injured and that the injury was part of a

pattern. *Austin v.* Cohen, 268 Ga. App. 650, 655 n.4 (2004); *Chang v. Bank of Am.*,

251 Ga. App. 577, 577 (2001).

Plaintiff alleges that she was last trafficked in 2012. *See* Dkt. 70, at ¶ 86.

And, because Plaintiff filed her RICO claims against WHRI and MISF more than

five years after she was last allegedly trafficked, the Georgia RICO claims against

the "Microtel Defendants" are time-barred. Plaintiff's counsel, however, has taken

the position in parallel proceedings that a 2015 amendment to the statute of

limitations saves these claims. *See Jane Doe 2 v. Red Roof Inns, Inc., et al.*, 1:19-

cv-03841-WMR (N.D. Ga.), Dkt. 191, at 9-12.

In 2015, the legislature revised the statute of limitations in conjunction with

---

[6] O.C.G.A. §16-4-8 was revised effective July 1, 2015. The version in effect at the time of Plaintiff's alleged trafficking required that a civil action be brought within five years after the conduct terminated "or the cause of action accrues." This version of the statute of limitations also bars Plaintiff's RICO claims.

the creation of the Uniform Civil Forfeiture Procedure Act as follows:

> Notwithstanding any other provision of law setting forth a statute of limitations, a criminal proceeding or civil action brought pursuant to Code Section 16-14-6 shall or proceeding under this chapter may be commenced up until five years after the conduct in violation of a provision of this chapter terminates or the cause of action accrues.

2015 Ga. Laws 693 (comparison of the full O.C.G.A. §16-14-8 attached as **Exhibit A**, at 45-46). Before the 2015 amendment, the statute contemplated the filing of actions five years after either the termination of "the conduct in violation of [RICO]" or the accrual of "the cause of action." Plaintiff's counsel has argued that, because the accrual language was removed, the statute of limitations for civil claims now begins to run once the conduct in violation of Georgia RICO terminates—irrespective of when the plaintiff was injured. Apparently based on that premise, the Amended Complaint alleges in conclusory fashion on "information and belief" that—although her alleged trafficking ceased in 2012—the Microtel Defendants' conduct has not terminated and the violation of the Georgia RICO Act continues. *See* Dkt. 70, at ¶ 532.

Plaintiff's alternative interpretation is flawed because it betrays the long-standing limitation that a plaintiff can bring RICO claims only for "injuries incurred as a result of predicate acts directed towards [the plaintiff], as opposed to predicate acts directed towards third parties." *Lockhart v. Columbian Chemicals*

*Co., Inc.*, 2007 WL 9706424, *3 (N.D. Ga. Aug. 31, 2007) (citation omitted). In addition, it relies on bare assertions devoid of supporting factual allegations. *See Simpson*, 744 F.3d at 708 ("A plaintiff cannot rely on 'naked assertion[s] devoid of further factual enhancement.'" (quoting *Iqbal*, 556 U.S. at 678)). Plaintiff's Georgia RICO claims as to WHRI and MISF should be dismissed as time-barred.

### B.   Plaintiff's Georgia RICO claims fail because WHRI and MISF did not commit predicate acts or conspire to do so.

Companies—like WHRI and MISF—can be held civilly liable for a RICO violation, but only if "the commission of the crime is authorized, requested, commanded, performed, or recklessly tolerated by the board of directors or by a managerial official who is acting within the scope of his employment in [sic] behalf of the corporation." O.C.G.A. § 16-2-22; *Clark v. Sec. Life Ins. Co. of Am.*, 270 Ga. 165, 167 (1998) (disapproved of on other grounds by, *Williams Gen'l Corp. v. Stone*, 280 Ga. 631 (2006)) ("Because RICO is directed to 'organized criminal elements,' we conclude that it is more appropriate to assess vicarious liability under it in accordance with liability for criminal acts.").

Plaintiff alleges a list of predicate racketeering acts: (1) sex trafficking in violation of federal law; (2) sex trafficking in violation of state law; (3) false imprisonment; (4) battery; (5) keeping a place of prostitution; (6) pimping; and (7) pandering. *See* Dkt. 70, at ¶¶ 431-449. Plaintiff does not, however, allege that any

director or managerial official of WHRI or MISF "authorized, requested, commanded, performed, or recklessly tolerated" any predicate act that injured Plaintiff. To the contrary, Plaintiff only makes such allegations as to unidentified persons working at the independently owned and operated franchised hotel in question. These allegations do not establish that any director or managerial officer of WHRI or MISF was even aware of any alleged predicate acts. Nor was the participation in or allowance of criminal activity within the scope of anyone's employment. Accordingly, the RICO claims against the WHRI and MISF.

Similarly, Plaintiff's RICO conspiracy claims also fail. Plaintiff has made only the conclusory allegation that the "Microtel Defendants" were part of a conspiracy. Plaintiff has not alleged any facts that indicate that anyone at WHRI or MISF agreed to enter into a conspiracy, let alone that they did so with the authorization of any managers or directors. *See Rowe v. Gary, Williams, Parenti, Watson & Gary, P.L.L.C.*, 181 F. Supp. 3d 1161, 1194-95 (N.D. Ga. 2016), *rev'd on other grounds* (dismissing plaintiffs' federal RICO claim because complaint did "not contain any factual allegations about the [defendants'] agreement to commit the predicate acts. . . . [but pled] the RICO claims against the [d]efendants in the collective," explaining that "[p]laintiffs' allegations regarding the conspiracy agreement are conclusory. Plaintiffs' would simply have this Court impute liability

21

for [defendant's] actions onto the other lawyers in his firm as a matter of guilt by sheer association.").

## IV. Plaintiff's Negligence Claims Against WHRI And MISF (Count 38) Should Be Dismissed.

"It is well established that to recover for injuries caused by another's negligence, a plaintiff must show four elements: a duty, a breach of that duty, causation and damages." *Goldstein, Garber & Salama, LLC v. J.B.*, 300 Ga. 840, 841 (2017), *reconsideration denied* (Mar. 30, 2017). Insufficient facts for any one element will entitle a defendant to judgment—or, in this case, dismissal—in its favor. *See, e.g.*, *Barrett Properties v. Roberts Capitol*, 316 Ga. App. 507, 729 S.E.2d 621 (2012). Plaintiff alleges no facts that, under Georgia law, plausibly suggest that MISF as a franchisor (let alone WHRI as MISF's ultimate parent company) breached any of duty of care to Plaintiff, or is otherwise liable for acts of franchisees. *See, e.g.*, *DaimlerChrysler Motors Co., LLC v. Clemente*, 668 S.E.2d 737, 745-46, 49 (Ga. App. 2008) (holding in favor of franchisor in suit arising from damages caused by the franchisee, explaining that a franchisor may protect its brand by establishing "detailed, specific, and strict" operations standards without the imputation of liability from the franchisee to the franchisor, noting further that "the fact that a franchise agreement authorizes periodic inspections of the franchise

and gives the franchisor the right to terminate the agreement for noncompliance" is of no consequence).

Moreover, where another person's "criminal acts intervened between any breach of duty by [the defendant] and the injuries to [the plaintiff], and that those injuries would not have occurred without his criminal acts . . . the question is whether [the other person's] intervening criminal acts were foreseeable to" the defendant. *Goldstein, Garber & Salama, LLC v. J.B.*, 300 Ga. 840, 841 (2017) (stating that "[a]lthough questions of the foreseeability of intervening criminal acts are usually for the factfinder, when . . . the evidence on the matter is plain and undisputable, it is properly for the court's adjudication."). The intervening criminal act, without which the injury would not have occurred, breaks the causal connection between a defendant's negligence and injury, unless the criminal act was a reasonably foreseeable consequence of defendant's conduct. *Brown v. All-Tech Inv. Group, Inc.*, 265 Ga. App. 889, 893 (2003). "The natural and probable consequences are those which human foresight can foresee, because they happen so frequently that they may be expected to happen again." *Avis Rent A Car Sys. v. Johnson*, Nos. A19A0928, A19A0929, 2019 WL 5616683, at *3-5 (Ga. App. Oct. 31, 2019).

In *Goldstein*, the plaintiff brought a negligence action against a dental

practice to recover for sexual assault by a nurse anesthetist while plaintiff was under anesthesia. The Supreme Court of Georgia held that the dental practice could not reasonably have anticipated, apprehended, or foreseen the assault that proximately caused the injuries. 300 Ga. at 842-3. The Court explained that the criminal acts intervened between any breach of duty by the dental practice and the injuries to the patient because those injuries would not have occurred without the criminal act. *Id.* at 842. In determining whether the intervening criminal acts were foreseeable to the dental practice the Court explained that:

> [T]he fact that the dental profession is aware that sexual assaults of sedated patients can occur, and recognizes that such events should never happen, does not alone convert [the dental practice's] alleged breach of its duty to properly supervise [the nurse] into liability on [the dental practice's] part . . . . Rather, for any such breach to be considered the proximate cause of [the patient's] injuries, [the nurse's] criminal acts must be the "probable or natural consequences" of that breach . . . and it must be the case that those criminal acts could "reasonably have been anticipated, apprehended, or foreseen" by [the dental practice]. The evidence here simply does not show that [the nurse's] acts can be so considered. *Id.* at 843.

Accordingly, even assuming *arguendo* that Plaintiff had alleged facts plausibly suggesting that WHRI and MISF somehow breached a legal duty owed to Plaintiff, the criminal acts of third parties (e.g., Plaintiff's alleged traffickers) sever any causal relationship with Plaintiff's alleged injuries. That the hospitality industry is generally aware that sex trafficking can occur at hotels does not mean

24

that WHRI or MISF were in any way negligent as to Plaintiff. *See Gordon v. Starwood Hotels & Resorts Worldwide, Inc.*, 821 F. Supp. 2d 1308, 1313-14 (N.D. Ga. 2011) (recognizing that in order to be substantially similar, Georgia law requires that the circumstances surrounding the prior incidents be sufficiently similar to attract the owner's attention to the dangerous condition which resulted in the litigated incident).

Even taking the allegations in the Amended Complaint as true, the alleged criminal acts of the traffickers are the intervening proximate cause of Plaintiff's injuries. Because the criminal acts of the traffickers were not the "probable or natural consequences" of any alleged breach by WHRI or MISF, Plaintiff has failed to plead facts sufficient to support a negligence claim against WHRI or MISF. Plaintiff's negligence claim should be dismissed. *See Goldstein*, 300 Ga. at 843.

## <u>CONCLUSION</u>

For the foregoing reasons, the Motion should be granted and Plaintiff's Amended Complaint should be dismissed as against WHRI and MISF.

Dated: January 20, 2020                    Respectfully submitted,

By: /s/ Brendan Krasinski
Christopher Campbell
Georgia Bar No. 789533
Brendan Krasinski

25

Georgia Bar No. 159089
Delia G. Frazier
Georgia Bar No. 940667
DLA Piper LLP (US)
1201 West Peachtree Street, Suite 2800
Atlanta, Georgia 30309
Tel.: (404) 736-7800
Facsimile: (404) 682-7800
christopher.campbell@us.dlapiper.com
brendan.krasinski@us.dlapiper.com
delia.frazier@us.dlapiper.com

and

David Sager (*admitted pro hac vice*)
51 John F. Kennedy Pkwy, Suite 120
Short Hills, New Jersey 07078
Tel.: (973) 520-2570
Facsimile: (973) 215-2604
David.Sager@dlapiper.com

*Attorneys for Defendants*
*Wyndham Hotels & Resorts, Inc. and*
*Microtel Inns and Suites Franchising,*
*Inc.*

## <u>LOCAL RULE 7.1D CERTIFICATE</u>

Pursuant to Northern District of Georgia Local Rule 7.1D, the undersigned counsel hereby certifies that the foregoing has been formatted in Times New Roman font, 14-point type, which complies with the font size and point requirements of Local Rule 5.1B.

Dated: January 20, 2020.

By: <u>/s/ Brendan Krasinski</u>
      Brendan Krasinski

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have on this day electronically filed this document with the Clerk of Court using the CM/ECF system, which will send e-mail notification to all counsel of record.

Dated: January 20,2020

By: <u>/s/ Brendan Krasinski</u>
Brendan Krasinski